United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD L. RIGHETTI,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION *et al.*,<br><br>    Defendants.<br>_____/ | No. C-11-2717 EMC (pr)<br><br>**ORDER ON INITIAL REVIEW AND GRANTING REQUEST FOR COUNSEL** |

## I. INTRODUCTION

Gerald L. Righetti, an inmate at the Salinas Valley State Prison in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the Court for review under 28 U.S.C. § 1915A, which requires the Court to screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). Righetti's request for appointment of counsel also is before the Court for review.

## II. BACKGROUND

Righetti alleges the following in his complaint:

Righetti has been incarcerated by the State of California since his conviction in November 1996. He has been housed at Salinas Valley State Prison since about May 1999, and is currently housed in the correctional treatment center at that prison. (*Id.* at ¶¶ 4, 26.) At the time of his

incarceration, he was a quadriplegic. (Complaint, ¶ 4.)[1] He now is a "triplegic, due to loss of most of the motor function in three extremities but has normal sensation in all four extremities." (*Id.* at ¶ 27.) He can "assist with a pivot transfer by locking his legs straight," and has partial movement of his right arm and hand. (*Id.*) He uses an electric wheelchair, and requires care and assistance 24 hours a day. (*Id.*)

On or about July 11, 2007, certified nurse assistant Zuniga "rolled plaintiff Righetti on his left side and plaintiff was holding him self up with his right hand on the left bed rail. Plaintiff saw Defendant Guzman deliberately reach up and pull the knob that releases the bed rail causing the bed rail to go down and since that was the *only* support the plaintiff had plaintiff Righetti fell approximately three feet to the hard floor." (*Id.* at ¶ 29.) He broke his left femur when he fell. (*Id.*)

X-rays were taken at the prison radiology department. (*Id.* at ¶ 35.) Dr. Nguyen viewed the x-rays and told Righetti there were no broken bones. (*Id.* at ¶ 36.)

On July 12, 2007, Righetti was sent to Natividad Medical Center for a CT-scan of his head and x-rays of his left leg. Righetti told a nurse of his fall and that he had tremendous pain in the left upper leg, but only his knee was x-rayed. (*Id.* at ¶ 37.) Dr. Benda ignored Righetti's complaints that the wrong area had been x-rayed. (*Id.* at ¶ 38.)

On July 13, 2007, Righetti told Nguyen his head pain was a lot better but the left leg was still very painful, especially when moved. Nguyen did not examine the leg, and told Defendant Chalich to do the range of motion exercises. Although range of motion exercises were done on the right leg, Righetti was not able to endure the pain from the left side exercises. (*Id.* at ¶ 39.)

On or about July 18, 2007, Nguyen told Righetti he did not know why he was in so much pain, and told him to give it more time. (*Id.* at ¶ 40.)

---

[1] During a family dispute, Righetti drew a pistol and shot his estranged wife in the chest, shot at (but missed) his adult daughter's head, and "then placed the pistol to his temple and fired one shot. Both [Righetti and his estranged wife] survived the shooting. However, [Righetti] is now a quadriplegic." *Righetti v. Hedgpeth*, E. D. Cal. No. 09-1626 DLB, docket # 1, Ex. F (*People v. Righetti*, Cal. Ct. App. Opinion filed Jan. 15, 1998), p. 2. Upon his eventual plea of no contest, Righetti was convicted of attempted murder and sentence enhancement allegations of premeditation and firearm use were found true. *Id.* at 3. He was sentenced to life with the possibility of parole plus ten years. *Id.*

On July 26, 2007, more x-rays were done at the prison. Dr. Nguyen then informed Righetti his left leg was broken, and that the x-rays taken on July 11, 2007 did not include his left upper leg where the fracture was. (*Id.* at ¶ 41.) More x-rays were taken at Natividad. Thereafter Dr. Moeller (a doctor at Natividad) told Righetti that his broken left leg would need surgery, and instructed a nurse to prepare him for surgery. Dr. Moeller later told Righetti that Dr. Richman decided that, since Righetti was not able to walk, the surgery would not be done and the fracture would be treated with medications. (*Id.* at ¶ 43.) Dr. Richman never examined or talked to Righetti to learn about Righetti's ability to bear weight on his legs. (*Id.* at ¶ 44.) Dr. Moeller told Righetti it would take 3-4 months for the fracture to heal and that he would never stand again. (*Id.* at ¶ 47.)

On July 27, 2007, Righetti showed the prison's Dr. Lee a letter from a prison physical therapist stating that Righetti could bear weight on his legs, and showed Lee that Righetti's leg was twisting outwards since the fracture. Lee said there was nothing he could do. (*Id.* at ¶ 48.)

On or about August 16, 2007, prison staff decided that, since Righetti's leg was twisting at the fracture site, he needed an orthopedic consult. (*Id.* at ¶ 51.)

On or about September 6, 2007, Dr. Adade did surgery to repair the fracture. Dr. Adade told Righetti the fracture would not have healed without the surgery. (*Id.* at ¶ 53.)

Righetti continues to have pain from the leg. (*Id.* at ¶ 55.) Righetti sues numerous defendants for violating his Eighth Amendment right to be free from cruel and unusual punishment.

### III. DISCUSSION

A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Based on the face of the complaint, it appears that there is a likelihood of success on the merits and that Plaintiff's ability to pursue his claims is impaired. The request for appointment of counsel therefore is **GRANTED**.

(Docket # 2.) By separate order issued today, the Court will refer the matter to the Federal Pro Bono Project for counsel to be located.

Although the Court has determined that the allegations of the complaint are sufficient to support the appointment of counsel, the Court will not do a detailed review of the adequacy of the *pro se* complaint's allegations against particular Defendants at this point in time. The complaint is 63 paragraphs in length, has 15 named Defendants, and in some places is difficult to read. Often, appointed counsel chooses to amend the *pro se* pleading so as to improve some allegations. It is quite possible here that counsel will add claims, alter the theories of relief, drop some Defendants, and maybe decide that this case would be better pursued in state court. *See generally Hydrick v. Hunter*, No. 03-56712, slip op. 279, 287-89 (9th Cir. Jan. 12, 2012) (dismissing damages claims against defendants where plaintiffs had pleaded insufficient facts to establish plausible claims against the defendants in their individual capacities). For these reasons, the Court will wait to see whether appointed counsel chooses to file an amended complaint before reviewing the adequacy of the allegations against particular Defendants.

## IV. CONCLUSION

Plaintiff's motion for appointment of counsel is **GRANTED**. When appointed counsel appears in this action, he should inform the Court whether he intends to file an amended complaint and, if so, set a proposed schedule for such a filing. At that point, the Court will set a deadline for any amended complaint.

IT IS SO ORDERED.

Dated: January 18, 2012

EDWARD M. CHEN
United States District Judge

4