UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD L. RIGHETTI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, *et al.*,<br><br>　　　　Defendants._____/ | No. C-11-2717 EMC<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>**(Docket Nos. 48, 52)** |

　　　　Plaintiff Gerald S. Righetti, a state prisoner, has filed suit against, *inter alia*, the California Department of Corrections and Rehabilitation ("CDCR") and various medical professionals, alleging that they violated both his federal and state rights by failing to provide him with appropriate medical care.

　　　　Currently pending before the Court are motions to dismiss filed by three of the physicians who allegedly failed to provide Mr. Righetti with appropriate medical care. Those physicians are as follows: (1) Duc Nguyen, M.D., a physician who worked at the Correctional Treatment Center for Salinas Valley State Prison; (2) William Benda, Jr., M.D., a physician who worked at the Emergency Department of Natividad Medical Center; and (3) Michael G. Moeller, M.D., another physician who worked at the Emergency Department of the Natividad Medical Center.[1] In their motions, the physicians have challenged the only two claims that have asserted against them: (1) a claim for violation of 42 U.S.C. § 1983 and (2) a claim for medical malpractice.

---

[1] Mr. Moeller appears to have been erroneously named as "Mueller" instead of "Moeller."

## I. FACTUAL & PROCEDURAL BACKGROUND

Mr. Righetti initiated this lawsuit as a pro se litigant in June 2011. *See* Docket No. 1 (complaint). In January 2012, this Court stayed the case pending appointment of counsel. *See* Docket No. 10 (order). Counsel was subsequently appointed in February 2012. *See* Docket No. 11 (order). Subsequently, Mr. Righetti asked for leave to file an amended complaint, which the Court permitted. *See* Docket Nos. 13, 15 (orders). An amended complaint was filed in June 2012. *See* Docket No. 16 (FAC). In the amended complaint, Mr. Righetti alleges as follows.

Mr. Righetti is a state prisoner incarcerated at the Salinas Valley State Prison. *See* FAC ¶ 4. He has been at the prison since November 1996. *See* FAC ¶ 6. He suffers from triplegia, a condition that leaves him unable to move his legs and left arm and that requires him to be subject to around-the-clock medical care as well as daily living assistance. *See* FAC ¶¶ 4, 20. Although Mr. Righetti has lost most of the motor function in three extremities, he feels normal sensation, including pain, in all four extremities. *See* FAC ¶ 20.

On or about July 11, 2007, Mr. Righetti broke his left leg – the upper part – when he fell from his bed. *See* FAC ¶ 22. According to Mr. Righetti, he fell because the certified nursing assistants failed to properly assist him. *See* FAC ¶ 22.

Shortly after his fall, Mr. Righetti was taken to the prison's Treatment center to receive an x-ray. Dr. Nguyen reviewed the x-ray and told Mr. Righetti he had no broken bones. *See* FAC ¶ 25. Ultimately, an x-ray was conducted on Mr. Righetti's lower leg only – even though the pain he was experiencing was in his upper leg. Mr. Righetti did not know of this fact at the time.[2] *See* FAC ¶ 25.

Mr. Righetti was then sent to Natividad Medical Center, a nearby hospital, for a CAT scan and further x-rays. There, he was seen by Dr. Benda. Dr. Benda did not touch or even examine Mr.

---

[2] In his opposition, Mr. Righetti asserts that Dr. Nguyen "performed" the x-ray, Opp'n at 2, but that is not specifically alleged in the complaint. *See* FAC ¶ 25. Nor does the complaint contain allegations that Dr. Nguyen failed to review the x-rays.

Mr. Righetti also maintains that he complained to Dr. Nguyen about pain in his upper leg specifically, *see* Opp'n at 2, but again that is not expressly alleged in the complaint. *See* FAC ¶ 25.

2

Righetti's leg, despite the need for x-rays and Mr. Righetti's complaints of excruciating pain. *See* FAC ¶ 25.

On July 13, 2007 – *i.e.*, two days after the fall – Mr. Righetti informed Dr. Nguyen at the prison's Treatment Center that he was still experiencing extreme pain in his leg. Dr. Nguyen did not touch or examine Mr. Righetti's leg and simply told medical staff to do range-of-motion exercises on Mr. Righetti. Mr. Righetti was not able to do the exercises because of the intense pain. *See* FAC ¶ 26.

For several days thereafter, Mr. Righetti continued to tell Dr. Nguyen that he was still experiencing extreme pain. Dr. Nguyen failed to examine Mr. Righetti or provide any treatment in response. *See* FAC ¶ 27.

On July 26, 2007 – *i.e.*, approximately two weeks after the fall – Mr. Righetti went back to the prison's Treatment Center. After additional x-rays were taken, Dr. Nguyen informed Mr. Righetti that his left femur was fractured. Dr. Nguyen also told Mr. Righetti that, on the date of the injury, no x-rays were taken of his upper leg where the break was located. *See* FAC ¶ 28.

After the diagnosis, Mr. Righetti was taken back to Natividad Medical Center. (Although not entirely clear, it appears that this was on the same day.) At the hospital, he was told that repairing his leg would require surgery (to replace pins in the leg). *See* FAC ¶ 30. Although a doctor instructed a nurse to prepare Mr. Righetti for surgery, no surgery actually took place that day. *See* FAC ¶¶ 30-31. Dr. Moeller came to Mr. Righetti's room and told him that Neil Richman, M.D., a surgeon at the hospital, had decided to cancel the surgery – purportedly because Mr. Righetti would not be able to walk in any event because of his disability. Dr. Moeller also told Mr. Righetti that his fracture would be treated with narcotic medications instead. *See* FAC ¶ 31.

Mr. Righetti asked Dr. Moeller if the decision to cancel the surgery could be changed because, pre-injury, Mr. Righetti was able to bear some weight on his legs. Dr. Moeller only responded that the fracture would take several months to heal and that Mr. Righetti would never be able to stand again. *See* FAC ¶ 32.

The following day, July 27, 2007, Mr. Righetti gave a different doctor (C. Dudley Lee, M.D.) at the Treatment Center a letter from his physical therapist. In the letter, the therapist

expressed concern that Mr. Righetti's leg was abnormally twisting outward following his injury. The doctor told Mr. Righetti that there was nothing he could do. *See* FAC ¶ 35.

On August 6, 2007, Dr. Lee met with Mr. Righetti's physical therapist, after which it was decided that Mr. Righetti should receive an orthopedic consultation. The consulting physician from UC Davis determined that a surgical repair using a metal plate and pins was required. The physician instructed Dr. Nguyen to schedule the surgery. *See* FAC ¶ 38.

On September 6, 2007 – *i.e.*, almost two months after Mr. Righetti sustained the injury to his leg – a doctor at Natividad Medical Center performed surgery to repair Mr. Righetti's leg. The doctor informed Mr. Righetti that "his femur bone had pulled about 1/2 to 3/4 inches apart and would never have healed without surgery." FAC ¶ 39. In spite of the surgery, Mr. Righetti continues to experience constant pain. *See* FAC ¶ 40.

Based on, *inter alia*, the above allegations, Mr. Righetti has sued Drs. Nguyen, Benda, and Moeller for (1) deliberate indifference to serious medical need in violation of 42 U.S.C. § 1983 (Eighth Amendment) and (2) medical malpractice. Mr. Righetti has also sued other defendants for the same and additional claims. Currently pending before the Court are motions to dismiss filed by Drs. Nguyen, Benda, and Moeller.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Section 1983 Claim

> The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference.

*Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

Under the objective standard, a "'plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). As for the subjective standard,

> deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." The state of mind for deliberate indifference is subjective recklessness. But the standard is "less stringent in cases involving a prisoner's medical needs . . . because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'"

*Snow*, 681 F.3d at 985.

1. Dr. Nguyen

In the instant case, Dr. Nguyen argues that the § 1983/Eighth Amendment claim should be dismissed because Mr. Righetti has failed to adequately plead deliberate indifference. The Court rejects this argument.

Mr. Righetti has adequately plead a claim for relief based on Dr. Nguyen's ignoring of his repeated complaints of pain which delayed treatment. *See, e.g.*, FAC ¶ 27 (alleging that, for several days up to July 18, 2007, "Plaintiff Righetti repeatedly told Defendant Dr. Nguyen that he was experiencing excruciating pain in his leg and was not sleeping as a result" but that "Defendant Dr.

5

1 Nguyen did not conduct any examination or provide any treatment in response to Plaintiff Righetti's
2 complaints and pleas for help"). Dr. Nguyen allegedly reviewed an x-ray of Mr. Righetti's lower leg
3 even though he complained of pain in his upper leg, where in fact the fraction occurred. Deliberate
4 indifference may be inferred where a physician repeatedly ignores a prisoner's complaints of pain,
5 especially where the pain is excruciating. *See, e.g.*, *Harris v. Hegmann*, 198 F.3d 153, 159-60 (5th
6 Cir. 1999) (concluding that allegations that medical providers ignored prisoner's repeated requests
7 for medical treatment and complaints of excruciating pain satisfied the deliberate indifference
8 standard); *Hudson v. McHugh*, 148 F.3d 859, 863-64 (7th Cir. 1998) (stating that "an inmate with a
9 potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a
10 serious injury" is "the prototypical case of deliberate indifference"); *see also McConnell v. Cirbo*,
11 11-cv-02342-WJM-KLM, 2012 U.S. Dist. LEXIS 116882, at *24 (D. Colo. Apr. 24, 2012)
12 (concluding that plaintiff adequately alleged deliberate indifference where she pled that "the
13 symptoms of her head injury persisted after her initial visit to DGH on the day she fell" and that "she
14 alerted Defendant Reilly to the existence of her continuing symptoms [but] did not receive follow-up
15 treatment"). *Compare Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (stating that, "[v]iewing
16 the totality of the care Walker received for his hemophilia, isolated incidents of delay or even
17 refusals to administer Factor VIII after clinical determinations that none was needed cannot be
18 construed to be deliberate indifference").

19 Furthermore, the Ninth Circuit has recognized that a delay in treatment can constitute
20 deliberate indifference, so long as the delay was harmful. *See Jett v. Penner*, 439 F.3d 1091, 1094,
21 1097-98 (9th Cir. 2006) (holding that a prison physician's months-long delay in scheduling a
22 medical consultation ordered by the prisoner's prior physician could constitute deliberate
23 indifference, where the record showed that the delay was harmful); *see also McGuckin v. Smith*, 974
24 F.2d 1050, 1060 (9th Cir. 1992) (stating that, "when . . . a claim alleges 'mere delay of surgery,' a
25 prisoner can make 'no claim for deliberate medical indifference unless the denial was harmful'"),
26 *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en
27 banc). Notably, "a finding that the defendant's activities resulted in 'substantial' harm to the
28 prisoner is not necessary." *Id.* (adding, however, that "a finding that the inmate was seriously

1 harmed by the defendant's action or inaction tends to provide additional support to a claim that the
2 defendant was 'deliberately indifferent' to the prisoner's medical needs").

3        In his motion, Dr. Nguyen protests still that a deliberate indifference claim cannot be
4 sustained because Mr. Righetti has failed to show that any harm resulted from the delay in treatment.
5 Dr. Nguyen claims that, once Mr. Righetti's problem was finally diagnosed, there were differing
6 medical opinions as to how he should be treated. Dr. Nguyen contends:

> Given the differing opinions of his treating surgeons, plaintiff cannot show that had he been diagnosed with a fracture by Dr. Nguyen on July 11, 2007 [the date of the fall], or at any time prior to the evaluation by the unnamed UC Davis physician, he would have received surgery prior to September 6, 2007, and therefore he cannot plausibly argue that any delay in diagnosis between July 11, 2007 and July 26, 2007 made any difference in the course of his care and treatment.

Mot. at 7-8.

       Dr. Nguyen's argument is not persuasive. A reasonable jury can find that, if the diagnosis had been made earlier, a surgery likely would have been scheduled earlier, even with differing medical opinions about treatment. Moreover, Mr. Righetti alleges that the delay did cause him harm because his leg started to grow outward abnormally, an issue raised by his physical therapist. *Cf. Jett*, 439 F.3d at 1098 (finding that there could be harm based on a delay in treatment where a fracture did not align upon healing, thus causing a deformity in the prisoner's thumb). It also caused harm in prolonging his excruciating pain. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (noting that "[d]elaying treatment may constitute deliberate indifference if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain'").

       For the foregoing reasons, Mr. Righetti has adequately pled deliberate indifference based on Dr. Nguyen's ignoring of his complaints of pain which led to a delay in treatment.

       2. <u>Dr. Benda</u>

       In his motion, Dr. Benda makes basically the same arguments as Dr. Nguyen did in his motion – *i.e.*, that Mr. Righetti has failed to adequately plead deliberate indifference and, even if the deliberate indifference claim is based on a delay in treatment, Mr. Righetti has failed to establish that the delay resulted in any harm.

7

Just as the Court found Dr. Nguyen's causation problematic, it also finds Dr. Benda's causation argument problematic. However, the Court agrees with Dr. Benda that, as the complaint currently stands, Mr. Righetti has failed to adequately pled deliberate indifference. In the amended complaint, Mr. Righetti alleges that, when he was sent to Natividad Medical Center shortly after his fall, he was seen by Dr. Benda and that "Dr. Benda did not touch or even examine [his] left leg at that time, despite the need for x-rays and [his] complaints of excruciating pain. *See* FAC ¶ 25. But the Court fails to see how his rises to the level of deliberate indifference because, as pled, it appears that Dr. Benda knew that x-rays were to be taken; there is no allegation that he ignored the x-rays. Thus, his failure to touch Mr. Righetti as part of his diagnostic procedure does not in and of itself enough to establish deliberate indifference. In other words, the complaint does not allege that Dr. Benda patently ignored Mr. Righetti's complaints even if he did not physically touch or examine Mr. Righetti's leg.

The Court therefore grants Dr. Benda's motion but shall give Mr. Righetti leave to amend because it is not clear, at this juncture, that any amendment would be futile.[3]

3.  Dr. Moeller

Finally, Dr. Moeller has moved for dismissal on the grounds that Mr. Righetti has failed to adequately plead deliberate indifference and/or harm as a result of his actions or omissions.

In his opposition brief, Mr. Righetti clarifies that he is not seeking to hold Dr. Moeller liable simply because he conveyed another doctor's decision to cancel the surgery. Nor is he seeking to hold Dr. Moeller liable on the theory that the physician was part of the decision to cancel the surgery. Rather, Mr. Righetti has filed suit against Dr. Moeller because he failed to respond to his complaints of pain and his request for a consultation. *See* Opp'n at 10 (arguing that "Dr. Moeller

---

[3] The Court notes that, in his reply brief, Dr. Benda makes a new argument in support of dismissal – *i.e.*, that he was not aware that Mr. Righetti had a serious medical need, *i.e.*, that Mr. Righetti was suffering from a broken femur. *See* Reply at 5. While the Court could deem the argument waived because it was not raised until the reply brief, the argument also has problems on the merits. Deliberate indifference simply requires that the defendant-physician be aware of the plaintiff-prisoner's "'pain or *possible* medical need.'" *Wilhelm*, 680 F.3d at 1122 (emphasis added). The defendant-physician does not have to be aware of the exact medical problem. *Cf. Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (noting that "[a] prison official's 'deliberate indifference' to a *substantial risk of serious harm* to an inmate violates the Eighth Amendment") (emphasis added). Here, Mr. Righetti has alleged that Dr. Benda knew of his complaints of excruciating pain.

8

ignored Mr. Righetti's concerns and questions and did nothing in response to Mr. Righetti's request for consultation").

However, the allegations in the amended complaint does not allege that Dr. Moeller did nothing. Most notably, Mr. Righetti alleges that Dr. Moeller told him that "the fracture would be treated with narcotic medications instead" of surgery. FAC ¶ 31. In his opposition, Mr. Righetti tries to downplay this allegation, stating: "Nowhere does the FAC indicate that Dr. Moeller made the decision to provide Mr. Righetti with pain relief, presumably making it a disputed fact for discovery." Opp'n at 11. But this argument misses the point. Even if Dr. Moeller himself did not make the decision to provide Mr. Righetti with pain relief, he was aware of the treatment plan and evidently concurred. While Mr. Righetti might believe that a consultation was needed to reassess this decision, the Ninth Circuit has, as noted above, held that "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *cf. Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (stating that "a mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference'[;] [r]ather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health'").

The Court therefore dismisses the claim against Dr. Moeller. Here, the dismissal is with prejudice because there is no indication that Mr. Righetti might be able to plead additional facts to establish deliberate indifference on the part of Dr. Moeller.

C.  Medical Malpractice Claim

As to each of the doctors, Mr. Righetti has also asserted a claim for medical malpractice. The doctors all argue that this claim is barred by the statute of limitations.

California Code of Civil Procedure § 340.5 provides as follows:

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first.

Cal. Code Civ. Proc. § 340.5. "The term 'injury' means both the plaintiff's physical condition and its negligent cause." *Jefferson v. County of Kern*, 98 Cal. App. 4th 606, 610 (2002).

In the instant case, it appears that, at the very least, Mr. Righetti knew he had been injured by April 2008, as by that time he had pursued administrative claims and those claims had been denied. *See* FAC ¶ 41. Although Mr. Righetti claims that there is a factual dispute as to when he discovered his injury, he has failed to explain why he did not know of the injury as of April 2008. *See* Opp'n at 13. Therefore, Mr. Righetti should have filed suit at the latest by April 2009 in order to avoid the time bar. Mr. Righetti did not do so; he did not initiate this lawsuit until June 2011.[4] Unless there is a basis for statutory or equitable tolling, his medical malpractice claim cannot survive.

The parties seem to agree that, because the medical malpractice claim is a state claim, state law on tolling applies. *Cf. Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964 , 966 (9th Cir. 1993) (noting that, "[a]s a federal court exercising its diversity jurisdiction, the Illinois district court would have applied the substantive law of Illinois, including Illinois' choice-of-law rules and its statutes of limitation"). In his papers, Mr. Righetti seems to argue for tolling because (1) he diligently pursued his administrative claims, (2) he has been incarcerated during the entirety of the relevant period, and (3) he has been subject to a physical disability (triplegia) during the entirety of the relevant period.

The first ground should not be given any weight because the above analysis assumes that Mr. Righetti only had an obligation to act *after* his administrative claims were already resolved. The pendency of the administrative claim prior to April 2008 does not help Mr. Righetti.

The second ground is, however, a basis for tolling. More specifically, there is a statutory basis for tolling where a plaintiff is imprisoned. California Code of Civil Procedure § 352.1(a) provides that,

> [i]f a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

---

[4] The medical malpractice claim was formally added to the lawsuit a year later, *i.e.*, in June 2012, when the amended complaint was filed.

10

1  Cal. Code Civ. Proc. § 352.1(a). This means that, instead of April 2009, Mr. Righetti had until April
2  2011 to bring suit. The problem for Mr. Righetti is that he did not file this lawsuit until June 2011,
3  *i.e.*, some two months later. To the extent Mr. Righetti suggests that he should be given more than
4  two years for tolling based on his incarceration, that argument lacks merit. At least one state court
5  has disapproved such an argument. *See Rose v. Hudson*, 153 Cal. App. 4th 641, 656 (2007)
6  (rejecting plaintiff's argument that "his 10 years of incarceration should be deemed a legal disability
7  under the doctrine of equitable tolling" because "section 352.1 places a two-year limit on tolling due
8  to incarceration (which we have already factored into the equation concluding the complaint was
9  untimely)"). The fact that, "*[p]rior* to the enactment of § 352.1(a) . . . , prisoners serving less than a
10 life sentence could toll claims for their entire sentence," *Johnson v. State of Cal.*, 207 F.3d 650, 654
11 (9th Cir. 2000) (emphasis added), also weighs against extending the tolling period beyond two years
12 under the current law.

13       The next question is whether Mr. Righetti is entitled to tolling based on his physical
14 disability (triplegia). The doctors correctly point out that there is no *statutory* basis for tolling based
15 on a physical disability. *See* Cal. Code Civ. Proc. § 352(a) (providing for tolling where the
16 disability is that the person is "either under the age of majority or insane"; not providing for tolling
17 based on a physical disability); *Sanchez v. South Hoover Hosp.*, 18 Cal. 3d 93, 102 (1976) (noting
18 that § 352 "do[es] not include either physical debility or hospital confinement"). However, that does
19 not resolve the question of whether there may be an *equitable* basis for tolling based on a person's
20 physical disability.

21       At the hearing, Mr. Righetti admitted that he has found no authority that allows for equitable
22 tolling under California law based on a person's physical disability. The Court's own research has
23 also failed to uncover any such authority. *Cf. California Standardbred Sires Stakes Comm., Inc. v.*
24 *California Horse Racing Bd.*, 231 Cal. App. 3d 751, 756 (1991) (noting that "[s]tatutes of limitation
25 are, of necessity, adamant rather than flexible in nature and are upheld and enforced regardless of
26 personal hardship") (internal quotation marks omitted). In the absence of any authority, the Court is
27 not inclined to extend equitable tolling here, particularly when the allegations in the complaint
28 indicate that Mr. Righetti's physical impairments – while certainly significant – did not impede him

from pursuing administrative remedies. Notably, the underlying events took place from July to September 2007. In spite of his physical disability, Mr. Righetti was still able to file an administrative complaint in 2007 or 2008 because his administrative claims were resolved by April 2008. *See* FAC ¶ 41.

Accordingly, the Court dismisses with prejudice the medical malpractice claims against Dr. Nguyen, Dr. Benda, and Dr. Moeller.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the physicians' motions to dismiss. More specifically, the Court rules as follows.

1. Dr. Nguyen's motion to dismiss the § 1983 claim is denied.

2. Dr. Nguyen's motion to dismiss the medical malpractice claim is granted. The dismissal is with prejudice.

3. Dr. Benda's motion to dismiss the § 1983 claim is granted. The dismissal is without prejudice, and Mr. Righetti has leave to amend.

4. Dr. Benda's motion to dismiss the medical malpractice claim is granted. The dismissal is with prejudice.

5. Dr. Moeller's motion to dismiss is granted, both with respect to the § 1983 claim and the medical malpractice claim. Both claims are dismissed with prejudice.

Mr. Righetti may file an amended complaint with respect to those claims identified above within thirty (30) days of the date of this order.

This order disposes of Docket Nos. 48 and 52.

IT IS SO ORDERED.

Dated: October 3, 2012

_____
EDWARD M. CHEN
United States District Judge

12